UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

<u>CIVIL MINUTES -- GENERAL</u>

Case No.   EDCV 10-00176 VAP(DTBx)                    Date:  June 15, 2011

Title:   SANTOS MELENDEZ *v.* CATHEDRAL CITY, CALIFORNIA, A
POLITICAL SUBDIVISION OF THE STATE OF CALIFORNIA; CORWIN
DEVEAS, AN INDIVIDUAL; JEREMY HERRICK, AN INDIVIDUAL;
MICHAEL VANGORDER AN INDIVIDUAL; AND DOES 1-10

===============================================================
PRESENT:       HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

Marva Dillard                               None Present
Courtroom Deputy                            Court Reporter

ATTORNEYS PRESENT FOR              ATTORNEYS PRESENT FOR
PLAINTIFFS:                        DEFENDANTS:

None                               None

PROCEEDINGS:        MINUTE ORDER GRANTING IN PART AND DENYING IN
                    PART DEFENDANTS' MOTION FOR SUMMARY
                    JUDGMENT (IN CHAMBERS)

     On July 5, 2008, Cathedral City, California ("City") police officer Corwin
DeVeas ("DeVeas") detained and arrested Plaintiff Santos Melendez ("Plaintiff").  In
the course of Plaintiff's detention and arrest, he was injured.  Plaintiff brings one
claim under 42 U.S.C. § 1983 for unlawful arrest and excessive force against
several officers allegedly involved in Plaintiff's arrest and the force used against him
and one claim against Defendant City (collectively, "Defendants").  Defendants now
move for partial summary judgment.

Defendants' motion for partial summary judgment ("Motion") came before the Court for hearing on June 13, 2011.  After considering the papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS the Motion in part and DENIES it in part, for the reasons set forth below.

# I. BACKGROUND

On February 3, 2010, Plaintiff filed a complaint ("Complaint") against Defendant City and Defendants Deveas, Jeremy Herrick ("Herrick"), and Michael Van Gorder ("Van Gorder") (collectively, "Defendant Officers") asserting: (1) violation of U.S.C. § 1983 (for unlawful arrest and excessive force) against Defendant Officers; and (2) violation of 42 U.S.C. § 1983 (municipal liability for unconstitutional custom or policy) ("Monell claim") against Defendant City.  (Doc. No. 1.)

On May 9, 2011, Defendants filed: (1) the Motion (Doc. No. 28); (2) a memorandum in support of the Motion (Defs.' Mem. P. & A.) (Doc. No. 27); (3) a proposed statement of uncontroverted facts and conclusions of law ("SUF") (Doc. No. 29); and (4) the declaration of Peter J. Ferguson ("Ferguson Decl.") with Exhibits A through H attached[1] (Doc. No. 30).  Defendants seek partial summary judgment on Plaintiff's § 1983 claims as follows: (1) Defendant City seeks summary judgment on Plaintiff's Monell claim; (2) Defendant Van Gorder seeks summary judgment on all claims; and (3) Defendants DeVeas and Herrick seek summary judgment on Plaintiff's § 1983 unlawful arrest claim.  (Mot. at 1.)  Defendants' Motion does address Plaintiff's excessive force claims against Defendants DeVeas and Herrick.

On May 17, 2011, Plaintiff filed: (1) an opposition to Defendants' Motion ("Opposition") (Doc. No 37); (2) a separate statement of genuine issues of material

---

[1] Defendants' exhibits were not tabbed, in violation of Local Rule 11-5.3, which requires exhibits to be tabbed in sequential order.  The Court reminds Defendants' counsel to conform all mandatory chambers copies to the Court's Standing Order and the Local Rules.

fact ("SMF") (Doc. No. 40); (3) the declaration of Gregory Yates ("Yates Decl. I") with Exhibits A through C attached (Doc. No. 39); (4) the declaration of Lee A. Steiz ("Steiz Decl.") (Doc. No. 39); and (5) a "Response to Defendants' Proposed Statement of Uncontroverted Facts" ("SGI") (Doc. No. 41).[2]

On May 23, 2011, Defendants filed a reply to Plaintiff's Opposition ("Reply") (Doc. No. 43), along with (1) objections to the Steiz Declaration (Doc. No. 44), (2) a response to Plaintiff's SMF ("Defs.' Resp. to SMF") (Doc. No. 23); and (3) the supplemental declaration of Officer DeVeas ("Deveas Supplemental Decl.") (Doc. No. 46). On May 24, 2011, Defendants filed objections to the exhibits attached to Yates Declaration I. (Doc. No. 47.) On May 25, 2011, Plaintiff filed the declaration of Gregory Yates in opposition to the Motion ("Yates Decl. II") and a "Request to Lodge Original Deposition Transcript in Support of Plaintiffs' Opposition to Defendants' Motion." (Doc. No 50.) On June 2, 2011, Plaintiff lodged the original transcript from the deposition of Lieutenant Earl Moss. (Doc. No. 52.)

## II. FACTS

### A. Uncontroverted Facts

Both sides cite facts that are not relevant to resolution of the Motion. To the extent certain facts are not mentioned in this Order, the Court has not relied on them in reaching its decision. Furthermore, except as described below, the Court overrules the parties' objections, but has independently considered the admissibility of the evidence underlying the SUF and the SMF, and has not considered facts that are irrelevant or based upon inadmissible evidence. Finally, certain proposed facts are not adequately supported by the cited evidence; as to those proposed facts, the Court has considered and relied on the underlying evidence and found facts supported by that evidence, to the extent the evidence itself was admissible.

---

[2] Plaintiff's opposition papers were not blue-backed, in violation of Local Rule 11-3.5, which requires documents to be pre-punched and backed. The Court reminds Plaintiff's counsel to conform all mandatory chambers copies to the Court's Standing Order and the Local Rules.

The Court finds the following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of these Motions.  L.R. 56-3; see generally Fed. R. Civ. P. 56.

### 1.    Facts Related to Plaintiff's Unlawful Arrest Claim

Plaintiff and his cousin Cesar Melendez ("Cesar") were drinking and listening to music after celebrating Independence Day at Plaintiff's residence in the early hours of July 5, 2008.  (SUF 1, 42.)  Cesar was smoking and had a six-pack of beer with him.  (SUF 34.)  Plaintiff drank one beer.  (SUF 37.)  Around 1:50 a.m., Plaintiff drove Cesar to a gas station to purchase another six-pack of beer.  (SUF 39.)  When Plaintiff and Cesar returned from the gas station, Plaintiff parked his truck in his driveway, opened his garage, and turned on a portable CD player.  (SUF 1[3], 43.)

Around 3:30 a.m., Officer DeVeas was on patrol near Plaintiff's residence.  (SUF 1, 2.)  The window of DeVeas's vehicle was partially rolled down, and he heard music playing.  (SUF 3.)  Officer DeVeas was more than 50 feet from Plaintiff's residence when he heard the music.  (SUF 2.)  Officer DeVeas followed the music.  (SUF 1, 6.)  Officer DeVeas saw a portable CD player inside Plaintiff's garage, which he believed to be the source of the music.  (SUF 1,[4] 6.)  When Officer DeVeas

_____

[3] Defendants state that the music was coming from a "boombox" (SUF 1); Plaintiff asserts that while a "boombox" was in the garage, the music was coming from a small radio (SGI 1).  In Plaintiff's deposition, however, he affirms that Cesar's CD was playing on "the boombox."  (See Melendez Dep. at 92:20-25 (Defense Counsel: "And it was Cesar's CD on the – on the –" Plaintiff: "Yes." Defense Counsel: "– on the boombox?" Plaintiff: "Yes.").)  The Court has adopted the term "portable CD player" as it is undisputed that Plaintiff and Cesar were playing a CD on a portable device.  Moreover, the Court finds it immaterial whether Plaintiff was playing music from a small radio or a boombox.  Rather, the issue here is the volume level of the music, not the type of device.

[4] As noted above, Plaintiff disputes the source of the music.  Officer DeVeas's belief as to the source of the music is uncontroverted, however.

pulled up to Plaintiff's house in his vehicle, Plaintiff and his cousin Cesar still were playing music and drinking beer. (SUF 44; SMF 2[5].) Officer DeVeas stopped in front of Plaintiff's residence and rolled down his window. (SUF 6-7, 46.) Officer DeVeas saw Cesar standing on the sidewalk holding an open bottle of beer. (SUF 8.) Officer DeVeas saw Plaintiff leaning against his truck in the driveway, also holding a beer. (SUF 9, 43.) Plaintiff saw Officer DeVeas driving up the street. (SUF 45.) Both Plaintiff and Cesar looked at Officer DeVeas when he pulled up. (SUF 10.)

———————————————

[5] The excerpt of Plaintiff's Deposition submitted with the Opposition was not properly authenticated. (See Yates Decl. I, Ex. A.) When submitting a deposition or deposition excerpt as evidence on a motion for summary judgment, a party generally should include the cover page of the deposition and must include the signed, reporter's certification at the end of the deposition. See Orr v. Bank of Am., 285 F.3d 764, 773-74 (9th Cir. 2002) ("A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent . . . . It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy'. . . . Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.") (citations omitted). Here, Plaintiff did not include the signed, reporter's certification at the end of the deposition. (See Yates Decl. I, Ex. A.) Defendants accordingly object, arguing the Court should exclude evidence from the deposition and other deposition excerpts attached to the Yates Declaration for lack of foundation. (See Doc. No. 47 (Defs.' Obj. to Yates Decl.) at 1.)

On May 25, 2011, Plaintiff submitted the Yates Decl. II, and included the cover page of the depositions and the court reporter's signed certifications for Plaintiff's Declaration and the other deposition excerpts. (Doc. No. 49, Exs. A-C.) Although untimely, Plaintiff's subsequent filing cured the authentication defects. Thus, the Court has considered the excerpts of Plaintiff's Deposition and the deposition excerpts in Exhibits B and C.

MINUTES FORM 11                                    Initials of Deputy Clerk: jh-relief
CIVIL -- GEN                        Page 5

Officer DeVeas asked[6] Plaintiff and Cesar how they were doing.  (SUF 11, 48.)
Plaintiff responded that they were "fine," "talking," and "having a beer."  (SUF 50;
SMF 3.)  Though the timing is unclear, at some point Officer DeVeas stated that if
Plaintiff and Cesar did not take their beers inside, Officer DeVeas would arrest them
for drinking in public.  (SUF 15, 52; SMF 4.)  At some point, Plaintiff asked Officer
DeVeas if anyone had called the police because Plaintiff and Cesar were on
Plaintiff's property.  (SUF 13, SMF 5.)  Officer DeVeas responded that no one had
called.  (SMF 7[7].)  Plaintiff asked Officer DeVeas why the officer was going to arrest
him, and the officer responded for drinking in public.  (SUF 15, 18, 62; SMF 8[8].)
Officer DeVeas asked if Plaintiff lived at the house, and Plaintiff responded that he
did.  (SMF 9[9].)  Officer DeVeas asked Plaintiff whether he rented or owned the

---

[6] SUF 47 states that Officer DeVeas addressed Plaintiff and Cesar in English.
This is not supported by the underlying evidence, because Officer DeVeas states,
"Originally, I spoke to them in Spanish, [because] they were listening to Spanish
music, . . . but all of the responses were in English afterwards."  (Ferguson Decl.,
Ex. B (DeVeas Dep.) 53:22-25).)  Although Plaintiff did not dispute this fact, the
Court accordingly has not included it.

[7] Defendants object that it is irrelevant whether Officer DeVeas was
responding to a call regarding loud music.  (Defs.' Resp. to SMF 7.)  The Court
overrules this objection; whether Officer DeVeas was responding to a call is relevant
to the credibility of Plaintiff's statement that he was playing his music at a quiet
volume.  This in turn is relevant to whether Plaintiff was in violation of a noise control
ordinance.

[8] Defendants object that this statement is not relevant.  (Defs.' Resp. to SMF
8.)  The Court overrules the objection.  The events, including the words exchanged
between Plaintiff and Officer DeVeas, leading to Plaintiff's arrest are relevant to
whether the arrest was lawful.

[9] Defendants object to this statement as irrelevant.  (Defs.' Resp. to SMF 9.)
The Court overrules the objection for the same reasons set forth in Note 8 supra.

house, and Plaintiff responded that he owned it. (SMF 10[10].) Officer DeVeas responded, "I can still arrest you for drinking in public." (SMF 11[11].) At some point, Officer DeVeas stepped out of his vehicle and walked in front of it. (Id.) Officer DeVeas was inside his car for four to six minutes before he got out. (SUF 56.) At some point, Plaintiff stated, "Well, drink [sic] in public is from the sidewalk or outside the street." (SMF 12.[12]) Plaintiff then turned around and opened the door of his truck. (Id.) Immediately thereafter, Officer DeVeas grabbed Plaintiff from behind and threw him on the ground. (SMF 13.[13]) Officer DeVeas later arrested Plaintiff. (Compl. ¶¶ 1, 14.)

Officer DeVeas never told Plaintiff to turn down the music. (SMF 34[14].) Before Plaintiff turned and opened the door of his truck, he never told Officer DeVeas that Plaintiff was going inside the garage or house (SUF 54), nor that he was going to

_____

[10] Defendants object to this statement as irrelevant. (Defs.' Resp. to SMF 10.) The Court overrules the objection for the same reasons set forth in Note 8 supra.

[11] Defendants object to this statement as irrelevant. (Defs.' Resp. to SMF 11.) The Court overrules the objection for the same reasons set forth in Note 8 supra.

[12] Defendants object to this statement for the same reasons as SUF 8. (Defs.' Resp. to SMF 12.) The Court overrules the objection for the same reasons in Note 8 supra.

[13] Defendants object that this is not relevant to this Motion because Defendants are not moving for summary judgment as to Plaintiff's excessive force claim. (Defs.' Resp. to SMF 13.) The Court overrules the objection because the sequence of events leading up to Plaintiff's arrest is relevant to whether the arrest was lawful.

[14] Defendants object to this statement as irrelevant. (Defs.' Resp. to SMF 34.) The Court overrules Defendants' objection because this fact has some tendency to make more probable Plaintiff's statements that he did not believe he was under arrest and that Officer DeVeas never mentioned violation of a noise control ordinance.

move his truck (SUF 64). During Officer DeVeas's seizure and arrest of Plaintiff, Plaintiff suffered broken ribs and other physical injuries, including gastrointestinal injuries. (Compl. ¶ 1.)

When Officer DeVeas arrived at Plaintiff's house, Terry Joslin ("Joslin"), Plaintiff's next door neighbor at the time (SMF 14[15]), was standing outside next to his car smoking a cigarette, approximately 30 to 35 feet away. (SMF 15.) Joslin did not hear music coming from Plaintiff's residence. (SMF 16-17[16].) Joslin heard loud music playing, but believed it was coming from a residence down the street. (Defs.' Resp. to SMF 16; Joslin Dep. 112:12-18.) Joslin saw Plaintiff move towards his truck and thought Plaintiff was going to move his truck. (SMF 18[17].)

---

[15] As above in Note 5 <u>supra</u>, the deposition of Terry Joslin ("Joslin Dep.") attached to Yates Declaration I, was not properly authenticated. (<u>See</u> Yates Decl. I, Ex. B.) On May 25, 2011, Plaintiff submitted Yates Declaration II, with the court reporter's certification for the Joslin Deposition. (Doc. No. 49, Ex. B.) Although untimely, Plaintiff's filing cured the authentication defects, and the Court accordingly considers the Joslin Deposition.

[16] Defendants object, stating that it is not disputed that Plaintiff was playing music. (Defs.' Obj. to SMF 17.) Defendants do not succeed in controverting this fact, however: while it is uncontroverted that Plaintiff was playing music, it does not necessarily follow that Joslin could hear that music. Defendants also object because Joslin said he heard music, but that it was playing at another residence down the street. (Id.) The Court accordingly has included the statement regarding Joslin hearing music.

[17] Defendants object that this is speculative and irrelevant. (Defs.' Resp. to SMF 18.) The Court overrules this objection; Joslin's statement that he believed Plaintiff was moving his truck bears on the credibility of Plaintiff's statement that he turned and opened to the door of his truck with the intention to move it into the garage.

### 2.    Facts Related to Plaintiffs' <u>Monell</u> Claim

Kevin Conner ("Conner") has been the Chief of Police for the Cathedral City Police Department ("CCPD") since 2010.  (SUF 65.)  Conner previously served as a CCPD Captain for fifteen years.  (SUF 66.)  As Chief of Police, Conner is aware of CCPD policies regarding police administration and conduct, both currently and at the time of the incident.  (SUF 67.)  Conner read the allegations contained in the Complaint.  (SUF 70).

According to Conner, the City requires extensive and lawful training of police officers at certified academies.  (SUF 72.)  All CCPD officers attend only Peace Officer Standards and Training("P.O.S.T.")-certified academies that provide training in compliance with the laws of the State of California and the standards set by the Commission on P.O.S.T.  (SUF 73.)  The Commission on P.O.S.T. is the entity that establishes the standards that must be met by law enforcement agencies and peace officers in California.  (SUF 74.)  Once employed by Cathedral City, all sworn officers are required to complete at least 24 hours of P.O.S.T. certified training every 24 months.  (SUF 75.)

The City identifies and tracks possible excessive force by its officers through citizens' complaints and internal investigations that are either generated from citizens' complaints or independently generated by the police department.  (SMF 20.)  Sustained complaints are placed in an officer's personnel file for a required retention period, while complaints that are deemed not sustained, unfounded, or exonerated are placed in a locked file to which only the Police Chief's secretary has a key.  (SMF 21, 23, 24, 26.)  "Not sustained" means there is insufficient evidence, <u>i.e.</u>, "you can't prove either way that the allegation occurred."  (SMF 27.)  The required retention period for complaints is two years for CCPD internal investigations and five years for external investigations, <u>i.e.</u>, investigations initiated by a citizen complaint.  (SMF 25, 26.)

The City also maintains a computer database of complaints against officers. (SMF 22.)  The database includes only complaints related to CCPD internal investigations and formal complaints.  (SMF 30.)  Filing a lawsuit does not, itself, trigger an internal CCPD investigation.  (SMF 31.)  A lawsuit, in the absence of a

corresponding citizen's complaint, will only trigger a CCPD investigation where during the course of the lawsuit, "an officer admitted some wrongdoing[, such as] lying [or] excessive force." (SMF 33.) The CCPD did not conduct an internal investigation into Plaintiff's allegations in this action. (SMF 32.)

## B. Disputed Facts

The parties' versions of the events leading to Plaintiff's arrest and injuries differ significantly.

The parties dispute whether the music Plaintiff and Cesar were playing was loud. (SUF 5 ("It was loud."); SMF 2, 16-17 ("Mr. Joslin was standing 30-35 feet away from Plaintiff . . . [and] did not hear any music coming from Plaintiff's residence.").) The parties dispute whether the music Officer DeVeas initially heard was coming from Plaintiff's garage or from a residence down the street. (Compare SUF 1 ("Officer DeVeas arrived at the source of the music[, Plaintiff's residence, and] he saw a boombox in the garage."; 2 (Officer DeVeas "stopped in the street at a distance of greater than 50 feet from the boombox and could plainly hear that music was emanating from it.") with Joslin Dep. 112:12-18 (Joslin: "I really thought the policeman was there because of loud music, but the loud music usually was down about three houses on the left. And so I assumed that's why he stopped there, you know?" Defense Counsel: "Did you ever hear music?" Joslin: "No, not from [Plaintiff's] house. Probably down the street there on the left.").) The parties dispute whether Officer DeVeas advised either Plaintiff or Cesar that the music was loud. (SUF 16, 21; SGI 16, 21.) The parties dispute whether Officer DeVeas ordered Plaintiff not to move. (SUF 20, 22, 24, 25, 27; SGI 20, 22, 24, 25, 27.)

The parties disagree whether Officer DeVeas informed Plaintiff that he was under arrest. (See SUF 57; SGI 57.) Specifically, according to Defendants, Officer DeVeas told Plaintiff and Cesar that if Officer DeVeas had to step on the sidewalk, he would cite them (SUF 23 ("Officer DeVeas advised [Plaintiff] and Cesar that if he had to step on the sidewalk, he would cite them."), 52 ("The officer told them to drink inside or he was going to arrest them for drunk [sic] in public.")), but later assert that

Plaintiff admitted he knew he was under arrest[18] (see Defs.' Mem. P. & A. at 10; Reply at 2-3).  On the other hand, Plaintiff contends Officer DeVeas's statement was conditional, i.e., that Officer DeVeas would arrest Plaintiff if Plaintiff and Cesar did not go inside; Plaintiff alleges he was attempting to comply when he turned and opened the door of his truck.  (SUF 21, 57; SGI 21, 57; SMF 12, 18.)  The parties dispute whether Officer DeVeas ordered Plaintiff to stop or not to move before he turned and opened the door of his truck.  (SUF 20, 24, 28; SGI 20, 24, 28.)

## III. LEGAL STANDARD

A court shall grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998) (citing Anderson, 477 U.S. at 256-57); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

_____

[18] Defendants' argument that Plaintiff admitted he knew he was under arrest is not supported by the evidence.  Considered in context, Plaintiff's statements indicate he believed Officer DeVeas was stating that he would arrest Plaintiff if he and Cesar did not go inside, not that Plaintiff was actually under arrest.  Several of Defendants' statements of uncontroverted fact also adopt the word "if" or imply it, rendering the statements conditional.  (See, e.g., SUF 23, 52.)  Hence, Plaintiff's state of arrest depended on his compliance with Officer DeVeas's orders.  Plaintiff's later inquiries regarding the reasons for his arrest merely suggest that Plaintiff was seeking to determine why Officer DeVeas was threatening to arrest Plaintiff, not that he believed Officer DeVeas had already placed Plaintiff under arrest.

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. <u>Id.</u>; <u>Horphang Research Ltd. v. Garcia</u>, 475 F.3d 102,

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252. <u>See also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 14:144. A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. <u>Scott v. Harris</u>, 550 U.S. 372, 378, 380 (2007); <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

## IV. DISCUSSION

Defendants seek partial summary judgment on Plaintiff's § 1983 claims as follows: (1) Defendant Van Gorder seeks summary judgment on all claims; (2) Defendants DeVeas and Herrick seek summary judgment on Plaintiff's unlawful arrest claim; and (3) Defendant City seeks judgment on Plaintiff's <u>Monell</u> claim. (Mot. at 1.) Defendants also argue that even if a triable issue exists as to Plaintiff's unlawful arrest claim, Officer DeVeas nevertheless is entitled to summary judgment on the basis of qualified immunity. This Motion does not seek adjudication of Plaintiff's excessive force claim against Defendants DeVeas and Herrick.

## A.    Claims Against Defendant Van Gorder

Defendants seek summary judgment as to all claims against Defendant Van Gorder. In the Opposition, Plaintiff states he "does not oppose a summary judgment

for Officer Van Gorder."  (Opp'n at 3.)  The Court accordingly GRANTS Defendants'
Motion as to Defendant Van Gorder.

## B.    Claims Against Defendant Herrick

Defendants seek summary judgment as to Plaintiff's unlawful arrest claim
against Defendant Herrick.  Plaintiff does not mention Defendant Herrick in its
opposition, and accordingly fails to raise a triable issue as to Officer Herrick's
liability.  The Court accordingly GRANTS Defendants' Motion as to Plaintiff's 42
U.S.C. § 1983 unlawful arrest claim against Defendant Herrick.

## C.    Probable Cause to Arrest Claim Under § 1983

Plaintiff alleges that Defendant DeVeas subjected him to an unlawful seizure
in violation of the Fourth Amendment by arresting him without probable cause.
(Compl. ¶¶ 1, 14.)

A warrantless seizure "must be supported by probable cause to comport with
the Fourth Amendment."  Krainski v. Nevada ex. rel. Bd. of Regents Nev., 616 F.3d
963, 968-69 (9th Cir. 2010) (internal quotation marks and citations omitted); Picray
v. Sealock, 138 F.3d 767, 770 (9th Cir. 1998); United States v. Lopez, 482 F.3d
1067, 1072 (9th Cir. 2007) ("Under the Fourth Amendment, a warrantless arrest
requires probable cause.") (citing Michigan v. Summers, 452 U.S. 692, 700 (1981)).
The test for probable cause has been described as whether "at the moment the
arrest was made . . . the facts and circumstances within [the officer's] knowledge
and of which [he] had reasonably trustworthy information were sufficient to warrant a
prudent man in believing" a crime had been committed.  Hunter v. Bryant, 502 U.S.
224, 228 (1991) (internal quotation marks omitted); U.S. v. Hernandez, 322 F.3d
592, 596 (9th Cir. 2003) ("Probable cause exists if, under the totality of the
circumstances known to the arresting officers, a prudent person would have
concluded that there was a fair probability that the individual had committed a
crime.").

Defendants argue no triable issues exist as to Plaintiff's unlawful arrest claim
because Officer DeVeas had probable cause to arrest Plaintiff for violation of
Cathedral City Municipal Code § 11.96.030 ("Noise Control Ordinance" or "Section

11.96.030") and California Penal Code § 148 (Resisting, Delaying, or Impeding Arrest) ("Section 148").  (Defs.' Mem. P. & A. at 6-8.)  Plaintiff counters that triable issues of material fact exist concerning whether Defendant DeVeas had probable cause to arrest him.  (Opp'n at 3-7.)

**1.    Probable Cause to Arrest Under Cathedral City Municipal Code § 11.96.030**

Cathedral City Municipal Code § 11.96.030 provides, in relevant part:

A.    It is unlawful for any person to engage in the following activities:

 . . .

 4.   Operating or permitting the use or operation of personal or commercial music or sound amplification or production equipment that is:

a.   Plainly audible[19] across property boundaries;

 . . .

        d.   Plainly audible at a distance of twenty-five feet in any direction from the source of music or sound between the hours of ten p.m. and eight a.m.

Here, it is undisputed that Plaintiff was playing music between the hours of ten p.m. and eight a.m. in his open garage, but it is disputed whether the music was loud; it is disputed whether the music Officer DeVeas initially heard was coming from Plaintiff's garage or from a residence down the street; it is disputed whether Officer DeVeas advised Plaintiff that the music was too loud, or mentioned the music at all.

---

        [19] "Plainly audible" is "any sound that can be detected by a person using his or her unaided hearing faculties.  As an example, if the sound source under investigation is a portable or personal vehicular sound amplification or reproduction device, the investigating enforcement officer need not determine the title of a song, specific words, or the artist performing the song.  The detection of the vibration from the rhythmic bass component of the music is sufficient to constitute a plainly audible sound."  Cathedral City, Cal., Mun. Code § 11.96.020 (2007).

Construing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Officer DeVeas lacked probable cause to arrest and detain Plaintiff for violating Section 11.96.030.  See Barlow, 943 F.2d at 1135; see Hernandez v. City of Napa, __ F. Supp. 2d __, 2011 WL 996791, at *16-17 (N.D. Cal. Mar. 32, 2011) (holding that a triable issue exists where "a reasonable juror might be able to conclude that" an officer lacked probable cause) (emphasis in original).  Put another way, a reasonable jury could conclude that Officer DeVeas's belief that Plaintiff was in violation of the Noise Control Ordinance was unreasonable.

Section 11.96.030 provides that violation of the ordinance is an infraction, which may result in the following:  (1) issuance of an infraction citation; (2) issuance of a notice of public nuisance; (3) imposition of criminal and civil penalties; and (4) confiscation and impoundment as evidence, of the components that are amplifying or transmitting the prohibited noise.  Cathedral City, Cal., Mun. Code § 11.96.030(D) (2007).

Defendants argue that the minor penalty here is irrelevant, because an officer "who observes criminal conduct may arrest the offender without a warrant, even if the pertinent offense carries only a minor penalty."  (Reply at 1 (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); Tatum v. City of Cnty. Of San Francisco, 441 F.3d 1090, 1094 (2006)).)

In Bingham v. City of Manhattan Beach, 341 F.3d 939 (9th Cir. 2003), a § 1983 civil rights action, the Ninth Circuit held that "in evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." Id. at 950 (citations omitted); see also Reed v. Hoy, 909 F.2d 324, 330 n.5 (9th Cir. 1989) (indicating that state law is relevant in analyzing the reasonableness of a search under the Fourth Amendment).  Under California law, "[i]n all cases . . . in which a person is arrested for an infraction, a peace officer shall only require the arrestee to present . . . satisfactory [proof of identity] and to sign a written promise to appear." Cal. Penal Code § 853.5(a) (1985).  "Only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may

the arrestee be taken into custody." Id.; see also People v. Williams, 3 Cal. App. 4th 1100, 1105 n.1 (1992) ("Only if the arrestee refuses to present written identification or to sign the written promise to appear may he be taken into custody" under Cal. Penal Code § 853.5). As there is no evidence Plaintiff refused to comply with Section 853.5, custodial arrest for violation of the Noise Control Ordinance was "improper under state law even [if] probable cause existed to believe that [Plaintiff] was violating the law." Edgerly v. City & Cnty. of San Francisco, 599 F.3d 946, 956 (9th Cir. 2010).

In Virginia v. Moore, 553 U.S. 164 (2008), the Supreme Court held that police officers did not violate the Fourth Amendment by arresting a motorist whom they had probable cause to believe had violated a state driving law even though under Virginia law the officers should have issued a summons for the misdemeanor rather than made an arrest. Id. at 168-71. The Ninth Circuit recently clarified that in light of the Supreme Court's holding in Moore, "[I]f state law prohibits arrest, then any search incident 'State restrictions [on arrest] do not alter the Fourth Amendment's protections,' and under federal law, 'warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution.'" Edgerly, 599 F.3d at 956 (citing Virginia). An arrest supported by probable cause accordingly is constitutional, even if it was impermissible under state law. Id. The question of whether Officer DeVeas properly arrested Plaintiff for violation of the Noise Control Ordinance accordingly rests solely on whether there was probable cause, not whether his arrest was proper under state law. Thus, as discussed above, triable issues of fact remain as to whether there was probable cause to arrest Plaintiff pursuant to the Noise Control Ordinance.

## 2.   Probable Cause That Plaintiff Violated California Penal Code § 148

Defendants also argue that Officer DeVeas had probable cause to arrest Plaintiff under California Penal Code § 148 ("Section 148"). Section 148 "is often referred to as a statute prohibiting 'resisting arrest'[, but] the statutory prohibition is much broader than merely resisting arrest." Hooper v. Cnty. of San Diego, 629 F.3d 1127, 1130 (9th Cir. 2011). Section 148 provides, in relevant part,

> Every person who willfully resists, delays, or obstructs any . . . peace officer . . . shall be punished by a fine . . . or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

(Cal. Penal Code § 148(a)(1) (West 2007).)  Thus, the elements of a violation of Section 148(a) under California law are as follows:

> (1) defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.

Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (citing In re Muhammed C., 95 Cal. App. 4th 1325, 1329 (2002) (citations omitted)).  While delay is not criminalized under Section 148, repeated refusal to comply with police orders is. People v. Allen, 109 Cal. App. 3d 981, 987 n.1 (1980) ("[I]f [the appellant] was aware of the Officers' desire to arrest, [the appellant] had the concomitant duty to permit [himself] to be detained.").

The following facts are undisputed here: Plaintiff was drinking a beer in his driveway.  (SUF 9, 43.)  Officer DeVeas told Plaintiff that he could arrest Plaintiff for drinking in public if Plaintiff and Cesar did not take their beers inside.  (SUF 23, 52; SGI 23.)  Officer DeVeas was speaking with Plaintiff and Cesar for four to six minutes before Officer DeVeas got out of his vehicle.  (SUF 56.)  Plaintiff turned and opened the door of his truck.  (SUF 28; SMF 12.)  Officer DeVeas grabbed Plaintiff from behind and threw him on the ground.  (SMF 13.)  Officer DeVeas later arrested Plaintiff.  (Compl. ¶¶ 1, 14.)

Several important facts are disputed, however.  The parties dispute whether Plaintiff was complying with Officer DeVeas's direction to drink inside when he turned and opened his car door, or reacting to Officer DeVeas's statement that Plaintiff was under arrest.  The parties also dispute whether or not Officer DeVeas notified Plaintiff he was under arrest, and thus, whether Plaintiff knew he was under arrest.

Taking the facts in the light most favorable to Plaintiff, as a court must on a motion for summary judgment, a reasonable jury could conclude that Plaintiff was not willfully delaying or obstructing Officer DeVeas in performing his duties if the jury found credible Plaintiff's statements that: (1) Officer DeVeas never informed Plaintiff that he was under arrest; (2) Officer DeVeas never stated that Plaintiff was in violation of the Noise Control Ordinance; and (3) Plaintiff was opening the door of his truck in order to comply with Officer DeVeas's orders. Likewise, a reasonable jury could conclude that Plaintiff did not believe he was under arrest because Officer DeVeas did not tell Plaintiff affirmatively that he was under arrest but rather mentioned the possibility of arrest in conditional terms, i.e., if Plaintiff and Cesar did not comply with Officer DeVeas's orders, he could arrest them.

Moreover, the parties dispute whether Officer DeVeas ever notified Plaintiff and Cesar that their music was too loud. Taking the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff was not delaying or obstructing Officer DeVeas in performing his duties related to enforcing the Noise Control Ordinance, if they believe Plaintiff's contention that Officer DeVeas never mentioned the music. Thus, the Court finds Plaintiff has raised triable issues as to his § 1983 claim for unlawful arrest.

## 3. Qualified Immunity

Defendants argue that even if Plaintiff's arrest was not supported by probable cause, Defendant DeVeas is entitled to qualified immunity because a reasonable officer in his position would have believed that his conduct in arresting Plaintiff was lawful under the circumstances. (Defs.' Mem. P. & A. at 11.)

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A plaintiff need not point to a case specifically on point establishing the official action as unlawful, but he must establish that in light of pre-existing law the unlawfulness of the defendant's actions is apparent. Anderson v. Creighton, 483 U.S. 635, 640

(1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id.

The existence of clearly established law is a question of law. Elder v. Holloway, 510 U.S. 510, 516 (1994); Hunter v. Bryant, 502 U.S. 224, 228 (1991). In Harlow, the Court stated:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful . . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

457 U.S. at 818-19. If an officer's actions are objectively reasonable under the circumstances and in light of the clearly established law, then qualified immunity should be found. Anderson, 483 U.S. at 641; see also Saucier v. Katz, 533 U.S. 194, 202 (2001) (holding that a court must consider whether the law is clearly established such that "it would be clear to a reasonable officer the his conduct was unlawful in the situation he confronted.").

Qualified immunity is similar to an affirmative defense and the burden is on the Defendants to present evidence establishing their entitlement to immunity. Hunter, 502 U.S. at 233. Where it was reasonable for officers to believe that they have probable cause to make an arrest, even if they do not, they are entitled to qualified immunity. Id. at 224, 227-28.

As explained above, without probable cause, Plaintiff's arrest here is unconstitutional.  The law regarding the fundamental right to be protected from unlawful arrests was clearly established at the time of Plaintiff's arrest.  See Summers, 452 U.S. at 700 ("[E]very arrest[] and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause."); Mackinney v. Nielsen, 69 F.3d 1002, 1006 (9th Cir. 1995) (holding a police officer did not have probable cause for an arrest pursuant to Penal Code § 148 where the officer was in unmarked car, the plaintiff claimed that he did not know it was the police who gave the order, and the plaintiff's disobedience was only momentary); Martin v. City of S. Lake Tahoe, No. CIV. S-05-2167 FCD KJM, 2007 WL 2176372, at *9 (E.D. Cal. July 26, 2007) ("[T]he law regarding the fundamental right to be protected from unlawful arrests was clear [in 2007].") (citing Mackinney and People v. Patino, 95 Cal. App. 3d 11, 27 (1979) ("The crime of obstructing or resisting an officer in the performance of his duties . . . would appear to require an act done with the specific intent to interfere with the officer's performance of his duties.")).

In light of this clearly established law and viewing the facts in the light most favorable to Plaintiff, there remains a triable issue of fact as to whether Officer DeVeas's actions were objectively reasonable under the circumstances.  See Anderson, 483 U.S. at 641.  Crediting Plaintiff's version of the facts as the court must on a motion for summary judgment, a jury reasonably could conclude that a reasonable officer would not have believed that Plaintiff's arrest, as described by Plaintiff, was lawful.  See Harlow, 457 U.S. at 818-19 ("If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.").  Thus, Officer DeVeas is not entitled to qualified immunity at this stage.  The Court accordingly DENIES Defendants' Motion as to Plaintiff's claims unlawful arrest claim under 42 U.S.C. § 1983 as to Defendant DeVeas.

## D.   **Monell** Claim

Although the Court found Plaintiff raised triable issues as to Plaintiff's unlawful arrest claim, a municipality may not be held liable for the constitutional torts of its officers under a respondeat superior theory.  See Monell v. Dep't of Soc. Serv., 436

U.S. 658, 691 (1978).  Under <u>Monell</u> and its progeny, a plaintiff may hold a municipality liable under § 1983 if his injury was inflicted pursuant to city policy, regulation, custom, or usage.  <u>Chew v. Gates</u>, 27 F.3d 1432, 1444 (9th Cir. 1994) (citing <u>Monell</u>, 436 U.S. at 690-91, 694). The existence of a city policy may be established in one of three ways:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.  Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy.  Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

<u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) (quoting <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and internal quotations omitted)). Assuming a plaintiff can establish one of these three circumstances, he must then demonstrate that the municipal policy "caused" the constitutional deprivation. <u>Gates</u>, 99 F.3d at 918.  A municipal policy "causes" injury where it is the "moving force" behind the violation.  <u>Chew</u>, 27 F.3d at 1444 (citing <u>Monell</u>, 436 U.S. at 690-91, 694).

Thus, to succeed on a <u>Monell</u> claim against a municipal entity for failing to act to preserve constitutional rights, Plaintiff must show: "(1) that [he] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the [Plaintiff's] constitutional right; and (4) that the policy is the moving force behind the constitutional violation." <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 835 (9th Cir. 1996).

As discussed above, Plaintiff has raised triable issues as to his unlawful arrest claim and Defendants have not moved for summary judgment as to Plaintiff's excessive force claims.  Therefore, those claims may serve as the basis for <u>Monell</u> liability against the City.  Plaintiff's Monell theory is grounded on his claim that the

City's review of officer misconduct and method of maintaining records related to officer misconduct tacitly encourage or endorse police misconduct.  (Compl. ¶¶ 18-20; Opp'n at 7-10.)  Specifically, Plaintiff argues that by not including certain complaints – those deemed sustained, unfounded, or exonerated – in officers' personnel files or in any computer database, "the City cannot properly supervise and track officer[s'] misconduct, and cannot properly detect if there exists a pattern of conduct that may amount to civil rights violations."  (Opp'n at 8.) These policies, Plaintiff argues, lead to constitutional violations.  (Id. at 9.)

As triable issues exist as to whether the Officers violated Plaintiff's Fourth Amendment rights by unlawfully arresting him and exercising excessive force against him, Plaintiff has established the first element – that Plaintiff possessed a constitutional right of which he was deprived.

Plaintiff also has identified a policy, namely, the review and record keeping procedures related to police misconduct.  Plaintiff has not established triable issues as to whether the policy amounts to deliberate indifference to Plaintiff's constitutional rights, however.  See Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) ("Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury.") (citing Davis v. Mason Cnty., 927 F.2d 1473, 1482 (9th Cir. 1992)).

Here, the only evidence Plaintiff points to is that CCPD did not conduct an internal investigation into Plaintiff's allegations in this action.  (SMF 32.)  The Ninth Circuit requires more than a single, isolated failure to act to establish deliberate indifference.  See, e.g., Henry v. Cnty. of Shasta, 132 F.3d 512, 519 (9th Cir. 1997) (determining that evidence of other incidents similar to that alleged by the plaintiff, occurring after being put on notice unequivocally of other unconstitutional acts, was "persuasive evidence of deliberate indifference or of a policy encouraging such official misconduct").  Plaintiff adduces no additional evidence or similar unconstitutional acts to support his claim that the policy has resulted in constitutional violations.  Without something more than a single incident, a reasonable jury could not conclude that the City's ongoing policy of failing to keep all complaints – even those that deemed exonerated – against its officers was a conscious, affirmative

choice to ratify the use of excessive force and unlawful arrests.  Haugen v. Brosseau, 339 F.3d 857, 875 (9th Cir. 2003) (granting summary judgment because there were no facts that a single failure to discipline the officer rose to the level of a conscious, affirmative choice to ratify excessive force).  Plaintiff accordingly fails to raise a triable issue as to whether the City acted with deliberate indifference.

Moreover, Plaintiff fails to raise a triable issue as to the necessary causal connection between the policy and his constitutional violations, i.e., that the policy was the "moving force" behind the constitutional violations.  For the policy to be the "moving force" behind the unlawful arrest and excessive force, Plaintiff must show at least some evidence that the officer responsible for the application of that force or unlawful arrest - here, Officer DeVeas - would not have acted as he did or would have been prevented from doing so if the City had a proper policy for reviewing police misconduct and keeping records of complaints related to such misconduct. Here, aside from a statement in the Complaint that the City's policy resulted in deprivation of Plaintiff's rights, Plaintiff offers no evidence regarding a connection between the policy and the deprivation of his constitutional rights.  The Court accordingly GRANTS Defendants' Motion as to Plaintiff's Monell claim.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS Defendants' Motion as to Defendant Van Gorder;

(2) GRANTS Defendants' Motion as to Plaintiff's 42 U.S.C. § 1983 unlawful arrest claim against Defendant Herrick;

(3) DENIES Defendants' Motion as to Plaintiff's 42 U.S.C. § 1983 unlawful arrest claim against Defendant DeVeas;

(4) DENIES Defendants' Motion with respect to qualified immunity as to Defendant DeVeas; and

(5) GRANTS Defendants' Motion as to Plaintiff's Monell claim.

**IT IS SO ORDERED.**